IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 FEB 23 PM 12: 40

DEPUTY CLERK_____ NT

Ivan Vetcher,
    Plaintiff

V.

IMMIGRATION AND CUSTOMS ENFORCEMENT;
DUSTY ROWDEN, ICE Deportation Officer;
ASHLEY, (FNU) Detention Officer at Rolling
Plains Regional Jail and Detention Center;
Marcello Villegas, Warden, at Rolling
Plains Regional Jail and Detention Center;
ICE officers (LNU, FNU) involved
in deportation and transfer of plaintiff
in NY and NJ;
Defendants sued in their individual and
official Capacities

Case No.

Jury Trial Demanded

3-16CV-500-D

## Civil Rights Complaint, Bivens Action

1) Ivan Vetcher, the plaintiff herein after "Vetcher" is a citizen of the state of Texas who presently resides at Rolling Plains Regional Jail and Detention located at 118 County Rd 206 Haskell, Texas 79521

2) Defendant Immigration and Customs Enforcement, herein after "ICE", is a federal agency located at 8108 N. Stemmons Fwy., Dallas, Texas 75247, and at time of the complaints/claims alleged arose, was acting under the color of law; being responsible for "Administrative" hold/detention of plaintiff and all similarly situated persons in immigration detention; responsible for ensuring civil rights of detainees are not violated; responsible for ensuring their agents/employees/staff implement and enforce said policies/procedures approved by the Homeland Security Department, "DHS", ensuring that contracts in private, state jail and detention facilities and their agents/employees

staff implement and enforce said policies/procedures/rules/regulations, and enforcing civil rights provision to all immigration detainees under their care and supervision; ensuring civil rights violations and waste/ mismanagment of U.S. government funds do not occur.

3) Defendant DUSTY PLOWDEN, herein after "Plowden" is a citizen of Haskell, Texas and is employeed by ICE, as ICE Deportation Officer (DO) at Rolling Plains Regional Jail and Detention Center (RPRJDC) operated by Emerald Correction Managment, a private contractor. At the time of the claims alleged in this complaint arose, he was acting under the color of law; being responsible for ensuring DHS policies/rules/regulations are followed and implemented at privately owned facility RPRJDC, contracted by DHS-ICE to detain foreign immigrant detainees during "Administrative Proceedings"; ensuring civil rights and liberties of plaintiff and all similarly situated detainees at those facilities are not violated; ensuring adequate action is taken against facility's agents/employees/staff for retaliation and violation of civil rights and liberties of plaintiff and all similarly situated detainees; ensuring reporting of civil rights violations and waste/mismanagment of U.S. Goverment funds to appropriate superior authority in DHS-ICE; all while ensuring and not violating clearly established federal statutory and constitutional rights.

4) Defendant ASHLEY, first name unknown (FNU) herein after "Ashley" is a citizen of Haskell, Texas and is employed at RPRJDC as a detention officer responsible for operating/supervising/assisting Immigration detainees on "Administrative" hold in the law library. At the time of the claims alleged in this complaint arose was acting under the color of law; being responsible for providing and ensuring plaintiff and all similarly situated detainees "adequate, effective, and meaningful" access to courts by "assisting [detainees] in preparation and filing of meaningful legal papers" ensuring and by not directing or implementing a policy or regulation to "obstruct" or "frustrate" or "impede" or "infringe" or "retaliate" against immigration detainees First Amendment right to speech and

access to court, while substantially burdening fundamental First Amendment rights of ICE detainees; responsible for not violating DHS-ICE policies and clearly established federal statutory laws and constitutional rights of ICE detainees.

5) Defendant Marcello Villegas, herein after "Villegas" is a citizen of Haskell, Texas and is employed as Warden at RJPRJDC. At the time of the claims alleged when the complaint arose, was acting under color of law being the Supervisor Superior of the staff at RJPR3DC and is responsible for providing and ensuring that plaintiffs and all similarly situated immigration detainees civil rights and liberties are not violated; is responsible for ensuring DHS-ICE policies/rules/regulations are followed by subordinates/agents/employees/staff; is responsible for protecting detainees from staff retaliation for exercise of protected constitutional rights - First Amendment Right to speech and Access to Court and is responsible for compliance with DHS-ICE policies/rules/regulations while not violating clearly established statutory and constitutional rights of ICE detainees.

6) Defendants ICE agents, first and last name unknown, herein after "ICEA1" employed as deportation/removal officers by ICE responsible for instituting deportation at "JFW international airport" in New York, New York; responsible for deportations to be conducted in civil and humane way; responsible that DHS policies/rules/regulations are followed; all while ensuring and not clearly violating established federal statutory and constitutional rights.

7) Defendants ICE agents, first and last name unknown, herein after "ICEA2" employed as officers by ICE responsible for transporting detainees to Batavia, NY Buffalo Detention Center; responsible for transfer of detainees to be conducted in civil and humane way; responsible that DHS policies/rules/regulations are followed; all while ensuring and not clearly established violating established federal statutory and constitutional rights.

## Jurisdiction

8) This civil action arises to vindicate rights guaranteed to Vetcher and similarly situated detainees by the Constitution of the United States of America

9) Jurisdiction is asserted pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and 28 U.S.C. § 1331 vests this court with with subject matter jurisdiction as to the federal question claim. In addition, jurisdiction is asserted pursuant to 5 U.S.C. § 702.

## Venue

10) A substantial part of the events giving rise to claims in this action occurred in the counties within the Northern District of Texas, and plaintiff currently resides in a county within jurisdiction of the above said district.

11) Under 28 U.S.C. §§ 116 (a) and 1391 (b) venue lies in this Judicial District.

## Nature of the Case

12)   This civil complaint is brought by plaintiff Vetcher an ICE detainee for damages, declatory judgment and injunctive relief under Bivens; alleging ICE, a federal agency, violated rights of plaintiff and all similarly situated detainees by placing them in Jails/Detention Centers knowingly, and did cause them to be subjected to the conditions of confinement standards at those Jails/Detention Centers, violated standards established by Law and DHS policies/rules/regulations, causing immigrant detainees to be subjected to "punitive conditions of confinement" in violation of 1st, 5th, 6th and 8th Amendment rights guaranteed by the United States Constitution to all people present on the soul of U.S of America. In some cases the conditions of confinement were relatively same or even worse than those subjected on pretrial detainees and convicted prisoners. Plaintiff alleges that he and all similarly situated ICE detainees from July 2, 2014 to Febuary 16, 2016 have been subjected to denial of access to court, lengthy lock downs, lengthy lock downs due to count, denial of access to general interest correspondence, denial of access to publications; denial of access to modern means of communication, denial of access to modern day necessities such as but not limited to personal computer and internet; denial of access to personal property, denial of access to alternative vendors other that commisary companies approved by facilities; denial of conjugal visits; denial of contact visits, denial off proffesional treatment by staff and employees; denial of adequate meals both religious and non religious; denial of adequate access to health care; denial of humane treatment; intentional and purposeful actions to degrade or abuse or inflict suffering; denial imposing "unussual" and "atypical" "inordinary" hardship compared with others going through administrative proceedings; while withholding and violating civil liberties and rights contrary to the established rules/policies/regulations by DHS, violation of which has extended time in detention; creating a pattern of practice to deny detainees, of their civil rights, liberties and ability to contest conditions of confinement. Similarly from August 2015 to Febuary 2 2016, and from Febuary 12, 2016 to current, the staff-defendants

at privately operated RJPRJDC, concomitantly with the aid of ICE agent Rawden knowingly, did cause plaintiff and all similarly situated detainees' violation of civil rights/liberties by not following DHS policies/rules/regulations governing ICE detainees and violation of clearly established law. In addition, defendants retaliated and continue such actions against plaintiff and all similarly situated detainees who exercise their fundamental right to free speech provided by first Amendment to United States Constitution by reporting to public officials about unconstitutional activities occuring at RJPRJDC. Thereby, causing retalitory transfer of plaintiff and similarly situated ICE detainee - Murtaza Ali on Febuary 2, 2016, to a worse immigration facility - Johnson Law Enforcement Center located at 1800 Ridgemor Cleburne, Texas 76031. Here the ICE detainees are subjected to horrendous conditions of confinement.          . Defendants ICE; its agents and contractors showing acquiescence and willful blindness to the violations of plaintiff and all similarly situated detainees constitutional rights, privileges and immunities: the defendants did set in motion a series of acts by others, and knowingly refused to terminate acts by others to inflict constitutional injury; defendants are culpable for inaction in training, supervision and control of subordinates, all while defendants showed a "reckless or callous indifference to the rights of others." Defendants ICE and its agents or employees there of acted or failed to act in an official capacity or individually under the color of legal authority.

# Factual Allegations

13) Plaintiff Vetcher, re-alleges and hereby incorporates by reference all allegations set forth in paragraph 1-10 as if each has been seperately restated here.

14) On July 2, 2014 upon reporting to probation officer plaintiff was detained by ICE agents. On the same day plaintiff was transferred to RJPRJDC. Upon arrival at RJPRJDC plaintiff was not shown "know your rights" video. On July 17, 2014 plaintiff appeared for the first time infront of Immigration Judge. The plaintiff being uninformed about his rights; while being denied adequate law library access and adequate assistance in preparation and filing of court documents pursuant to Supreme Court decision in Bounds v. Smith, 430 U.S. 817, 828 (1977), conceded to immigration charges of "aggravated felony" unwittingly and without knowledge in violation of his due process rights, despite presence of a bona-fide challenge through categorical approach.[1] due to the presence of the said inadequacy. IJ ruled that plaintiff was only eligible for deferral of removal under Convention against Torture.

15) On August 8, 2014 IJ ordered plaintiff deported. Plaintiff appealed. While prepairing his appeal, pett plaintiff used Law Library computers to store legal material and prepare his brief while awaiting the arrival of court transcript. However on October, 2014 plaintiff was transferred to Etowah County Detention Facility in Gadsden, Alabama, leaving pertinent legal material involuntarily. During the transfer the Board sent transcript to RJPRJDC.

16) On December 28, 2014 the Board affirmed the decision of IJ. Plaintiff filed a motion to appeal with 5th Circuit. Plaintiff filed a motion of stay of removal, and the court informed DO Chauhan that if any removal action was being taken to be notified immediately. Not withstanding such request and contact ICE office of community outreach (#9116) plaintiff was transferred to Batavia, NY

---

[1] Plaintiff motioned the Board to re-open on March 22, 2015, on grounds that IJ should have been aware of such possibility due to prior cases in 5th Circuit, and since plaintiff was proceeding pro-se IJ should have informed him of such possibility

Buffalo Detention Center, from Etowah County Detention center in Gadsden, Alabama. During a week long transfer plaintiff has been unable to work on legal material/access law library. Upon arrival in Buffalo Detention Center plaintiff was strip-searched and his flashdrive was withheld.

17) On March 2, 2015 plaintiff was transferred to a detention facility in New Jersey, that employeed "quaranteen" treatment to all incoming detainees, keeping them on a 72 hour lockdown and afterwards only letting out for brief periods of time in alternation with inmates detained there in. Plaintiff has been unable to contact, ICE office of community outreach or Office of Inspector General, or his family.

18) On March 3, 2015 ICE attempted to deport plaintiff. At approx. ~8 am plaintiff was taken to the office located on Varrock street. ICE officers conducting deportation threw away Vetchers food stating that "it was airline policy." However no such written policy was provided upon request. This was conducted immediately after Vetcher informed ICE officers that he was "not going to cooperate with the deportation as I have a stay of removal pending with the 5th circuit" and "my litigation is not over yet." Vetcher pointed out that some of his legal property was missing including his flashdrive. ICE officers proceeded with the deportation. Arriving at JFK approx. 2:30 pm. Plaintiff cooperated until he was led to the corridor leading on the airplane, he refused to proceed to the airplane. THe ICE officers despite being made aware of the pending stay of removal motion by the 5th Circuit Court proceeded with removal using excessive force maliciously dragging and handcuffing plaintiff with intent to cause pain and suffering. ICE officers attempted to intimidate plaintiff by asphyxiating and stating "we will do this again next week if you do not comply" however the plaintiff did not relent in his exercise of first amendment right and was eventualy ordered to be taken of the airplane by its captain. ICE agents in retaliation for plaintiff causing them not to fulfill

their desire to get plaintiff deported via international flight, refused to assist handcuffed and restrained plaintiff, who was physically injured with his over eighty pound luggage. Stating "You want to play games with us ... we will show you how games are played. If you do not carry that shit, at the pace we are walking, you better kiss that shit goodbye." Plaintiff who was already horrified, drug his luggage in excrutiating pain in order for the ICE agents' threats not to come to fruition. If it were not for plaintiffs exercise of protected rights, retaliation would not have taken place.

19) On March 4, 2015 Transporting ICE agents further continued retaliation by tightening the handcuffs on plaintiffs abraised, swollen and numb hands. During transport plaintiff pleaded that the handcuffs be loosened. When the van stopped for the break, the ICE officer jammed his thumb on the inside of plaintiffs swollen wrists, forcefully wigling, with intentional malice to cause injury and stating "See, it aint tight if I can fit a finger." Upon arrival in Buffalo detention center plaintiff was strip searched, and informed that he was going to be put in the SHU. Plaintiff asked the supervising officer in charge, for a reason and when none was provided requested to be put on his prior pod.

20) On March 11, 2015 Plaintiff was transferred to LaSalle Detention facility in Gena, La which had a significantly worse enviroment for pursuing legal claims as the deficiency in the law library exceeded all the facilities in which plaintiff has been detained prior. The facility employeed regular hour long counts during which plaintiff and all similarly situated detainees were confined to their bunks. During the transfer plaintiff was unable to save his legal work to the flash drive as Batavia employed an internal saving system and staff refused to allow him to plug his flash drive to save his work.

21) On March 13, 2015 Plaintiff wrote a request to have his digital legal material to be released to him. On March 20, 2015 Plaintiff wrote a grievance addressing facility withholding his flashdrive and legal material which was kept in storage. On March 27, 2015 plaintiff

referred the matter to detainee grievance committee. Plaintiff was informed that "flashdrive" constitutes a "security risk" by major Waterfield, FNU. his position was affirmed by ICE officer present, John Doe. Plaintiff was informed that the contents of his flashdrive will be scanned and saved on the computer./CD that the facility uses. Plaintiff recieved a digital copy of his material on 4/11/15-4/13/15. Plaintiff used the format approved by this facility. However CD's broke and several times weeks of work was lost. Despite being made aware of the problem the facility and ICE denied plaintiff and similarly situated detainees a secure way to save legal material, exhibiting calous indifference to detainees litigation needs, and knowingly and willingly contributing to "hampering" and "frustrating" detainees claims in court.

22) On March 20, 2015 plaintiff filed a grievance contesting inadequate amount of time provided in the law library, less than 5 hours a week, On March 31, 2015 this complaint was brought to detainee grievance committee, plaintiff was herd heard on April 8, 2015. Plaintiff requested that this issue be resolved, and was informed that "Captain Waterfield will look further into this issue", however the problem persisted far into June 25, 2015 and remained unresolved. When plaintiff inquired into possibility of optimum performance he was informed that the facility did not have the resources to administer the requested fifteen hours a week. Plaintiff inquired into what the resources might be, in responce he was informed by ICE officer and Major Waterfield that they cannot disclose that for security reasons.

23) On April 10, 2015 plaintiff made a request to recieve legal material by mail on a CD, as law library was inadequate in terms of content as well, however the request was denied.

24) From March to August 2015 plaintiff made calls/complaints to Office of Inspector General concerning conditions in Lasalle detention facility.

25) Upon recieving a remand on motion to reopen from Bia in August 2015 plaintiff was transferred three times, once every week; LaSalle to Etowah[2], Etowah to LaSalle, LaSalle to Haskell. ICE and its agents have already established a personal policy/action to continue retaliation against plaintiff for exercise of his rights, causing multiple moves in order to cause pain harasment, physical and mental anguish, emotional distress and fatigue, caused by excessive and long duration transport. A well known tactic used against prisoners in federal and state correctional facilities — "Driesel treatment". A well known tool at disposal of the captors, to cause civil litigant to loose his case by not being able to file meaningful legal filings, failing to meet deadlines and possibility of loosing legal property in extensive transport. Not withstanding urine and feces infested buses plaintiff was forced to be transported in.

26) Plaintiff appeared before the Immigration Judge On September 16, 2015[IV], September 29, 2015[IV] and plaintiff was ordered deported on October 27, 2015. The deficiency in the law library preventing the plaintiff from succesfully litigating his case, as the government based its defense on the case not present in the law library, refused to provide plaintiff with a copy upon request.

---

2 Plaintiff's flash drive went missing

27) On November 24, 2015 officer Mrs. Ross, FNU withheld articles to assist plaintiff's presentation in court, samples of inspirational artwork and pictures of plaintiff's wife and son due to a punitive regulation targeting "printed material" not from publisher and since my wife printed them from her printer it constituted a violation of afore mentioned policy[3] On December 6, 2015 plaintiff filed a grievance addressing the issue, as additional material was confiscated without a clear penological reason (plaintiff's wife's emails), however the grievance was responded to as untimely and non-grievable despite the reoccurance of the issue.

28) On November 21%, 2015 educational books were withheld and despite request arriving for approval of those books on the same day due to a facility delay. Plaintiff was called to property and informed that the books will be either be sent back or put in property. On November 24, 2015 a request was filed with warden Villegas who changed a prior articulated policy of bringing over 12 books) limit to property, to having to either donate or send books back home to family at expense of plaintiff who is indigent. On December 6, 2015 plaintiff filed a grievance addressing the issue as well as allegation of staff misconduct in sending a book back that was prior approved by facility.

29) On December 6, 2015 plaintiff filed additional two grievances contesting the current policy of allowing detainees only 4 books every six months; and a policy/practice that prohibits detainees from saving food from the chow hall, forcing detainees to buy overpriced food from the commissary if they did not want to go hungry; and a pattern of practice of not granting available law library time when such time is available and requested

_____

3 Plaintiff wrote a request to Warden, it was returned as "Items are not authorized"

30 On December 8, 2015 Plaintiff wrote a letter to the warden addressing issues 27-29, reasoning that there existed no penalogical interest in pursuing these policies and that they were punitive in nature; and that they frustrated and impeded access to court. On November 25, 2015 Plaintiff had requested for absent legal material from ICE. That request was denied. The warden responded to the grievances, "your grievances have been answered". A copy of the letter was sent to defendant Rowden, however he had not furnished any responce. I appealed my grievances to detainee grievance committee, however because all of them were marked as "Non Grievable" I was put off on grievance hold on 12/21/2015.

31 Through August - December complaints were made about conditions on confinement at RPRJDC to IO6 hotline.

32 On January 2, 2016 Vetcher filed a grievance with RPRJDC warden defendant Villegas informing him, "The law library is not adequate as it does not have case law materials regarding civil rights/conditions of confinement cases in District or Appellate Courts, nor does it have adequate persons trained in law to assist detainees (English is their second language) in preparation and filing of court documents. The Supreme Court has held in Bounds v. Smith that prison/jail officials have an affirmative obligation to "assist inmates in the preparation and filing of meaningful papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in law."

33) On January 6, 2016 defendant Villegas fully aware of Vetcher's factual grievance based on clearly established law continued to deny Vetcher and all similarly situated detainees fundamental constitutional access to court under the First Amendment by denying Vetcher's grievances as "Non-Grievable, law library contains information approved by ICE standards. "showing acquiescence in the constitutional deprivation of detainees."

34) Facility discontinued providing fax service to Vetcher on January 5, 2016 when at aprx. 3p.m. Vetcher was informed by Mrs. Medford and Ms. Rodriguez, officers at RIPRJDC that he will no longer be able to recieve legal material through fax service, On January 26, 2016 witnessed by Ali and officer Duncan at 1353 hours he was informed by Mrs. Medford "do not have your wife send any more documents" Such denial reoccurred daily since 1/5/2016 with intention to deliberately "frustrate and impede access to court" by denying recieving legal assistance through fax service. Christopher v. Harbury 536 U.S. 403, 415-16, 122 S. Ct. 2179 (2002) when law library access is also deficient as to Bounds v. Smith. These issues were brought on grievances and returned as "non-grievable"

35) On January 20, 2016 Plaintiff alleged in a grievance that facility staff arbitrarily abuse their discretion in withholding legal assistance constituting deliberate indifference to pressing deadlines without legitimate penalogical reasons. "Regulations and practices that unjustifiably obstruct the availability of proffesional represen-tation or other aspects of the right of access to court are invalid" Procunier v. Martinez 416 U.S. 306, 416, 94 S. Ct. 1800 (1974) defendant warden Villegas and Rowden fully aware of factual grievances (34-35) continued to deny Vetcher and all similarly

situated detainees fundamental civil rights as "NonGrievable"

36) On January 15, 2016 plaintiffs microwave malfunctioned in the unit. Vetcher addressed the issue on a grievance on January 20, 2016, after five days without hot water. Plaintiff reported the issue to OIG, at aprx. 9:30 am the same day. The grievance was returned by the warden as "non-grievable" stating that "facility is aware... placed for replacement... soon as 1 comes it will be issued." However when the replacement was being made on January 27, 2016, almost two weeks after the microwave broke the maintenence main man replacing the microwave (Mr. Ashley, ex husband to the defendant ms. Ashley) exlaimed that "if we had the sign up it would have replaced right away" Whitnessed by Miguel Jimenez and Matthew Prince.

37) On January 8, 2016 Vetcher upon recieving information that water supply in Haskell, Texas where RJPRJDC is located, is contaminated, immediately filed a grievance with defendant Villegas stating, "the water supply at this facility is contaminated and is not recomended to be consumed. See Internet report regarding water contamination in Haskell, Texas. Jackson v. State of Arizona, 885 F.2d 639, 641 (9th Cir 1989) allegations of unsanitary food and poluted water stated an Eighth Amendment claim ... this involves risk to health and safety of all detainees, and the society considers the risk to be so grave that it constitutes contemporary standards of decency to expose anyone to such risks. Helling v. McKinney, 509 U.S. 25, 36 (1993)." Defendant Villegas fully knowing of Vetcher's factual grievance continued to deny Vetcher and all similarly situated detainees constitutional right to be free from physical harm, and fear and risk of future physical harm; showing acquiescence in the constitutional depravation of detainees and callous disregard to said violations and notice

38) On January 11, 2016 defendant Villegas denied grievance stating "non-grievable", with out addressing Vetchers concerns of health risk due to consumption of contaminated water aprx. 200 ppm over accepted federal safety risk.

39) On January 22, 2016 at aprx. 11:45 am upon Vetcher printing out a complaint to OIG, Atty General of U.S. was informed by defendant Ashley that he will no longer be allowed to print "such documents" and "I will talk to ICE about this later"

40) On January 22, 2016 at apprx. 1:30 p.m. Vetcher and immigration detainee Ali, Murtaza   were directed and escorted by officer Velcher to defendant Rowden's office restrained in hand cuffs. Defendant Rowden in concert with defendant Villegas and Ashley, showing acquiescence towards constitutional depravation of Vetcher and all similarly situated detainees' fundamental First Amendment Right, directed Ali and detainee Vetcher, that they will not be allowed to use the computers to type out grievances; directed them that all grievances should be hand written. Rowden continued the motion of series of acts by defendants Villegas and Ashley, and refused to terminate a series of acts by defendants Villegas and Ashley, knowingly that it would certainly cause defendants to inflict constitutional injury to Vetcher and all similarly situated detainees. Then defendant Rowden called defendant Ashley and requested her presence during Ali's and Vetchers interrogation/intimidation, to pressure them and cause to "chill" their "ordinary firmness" to exercise First Amendment right to "petition the government for redress of grievances." Upon arrival of defendant Ashley

defendant Rowden reiterated to Ali and Vetcher that they would not be allowed to type out grievance letters), a protected conduct on the law library computers. Directing denial of First Amendment Right to speech defendant Rowden failed to act in an official capacity or under the color of legal authority. Vetcher whitnessed Ali advise defendant Rowden that the law library was inadequate and it did not have the required federal materials regarding civil rights/conditions of confinement cases' in accordance with clearly established in the United States Supreme Court cases, Bounds v. Smith and Lewis v. Casey. Defendant Rowden upon notice of Ali's claims asked defendant Ashley if the information Ali provided was true, to which Ashley conceded and did admit that Ali's claims were indeed true. Defendant Rowden then called defendant Villegas, who fully well knowing of Vetcher's and Ali's factual allegations, grievances regarding access to court filed through January 2, 2016 - January 20, 2016 and acquiescance towards said violations, that if Vetcher wanted state/federal case laws he would have to contact the county clerks office and request for copies of cases he needed, which would only be provided upon payment in full for the copies to the Courts Clerk's office. Defendant Villegas stated that resolution to the inadequate/unavailable case law in the law in the law library was a "Hobson Choice", showing reckless and/or callous indifference to the rights of detainees. Vetcher whitnessed Ali then question defendant Rowden, "Are you telling me I cannot write a com complaint to Department of Justice ... Attorney General for the United States, Loretta Lynch? Or do I have to call inspector General's office?" Upon hearing Ali's statements/questions defendant Rowden conceded and stated that Vetcher and Ali could write to public government officials, and also advised defendant Ashley the same. At apprx. 1:57 p.m Vetcher and Ali were instructed to go back to their units by defendant Rowden and were escorted back by officer Velcher while restrained in handcuffs.

41) On January 25, 2016 Vetcher was advised by defendant Ashley that she would not allow meaningful printing of case laws per direction of ICE agent defendant Howden. Upon request by Vetcher and Ali to provide a memo citing DHS policy/rule/regulation that allowed the amount of case law to be limited to two pages, defendant Ashley stated she, "I do not have to provide a memo, I can do what I want.....figure out a way to stop me."

42) On January 25, 2016 Vetcher contacted OIG and informed them of the ongoing violations of his First Amendment rights by defendant Ashley, who was impeding and frustrating access to court as a form of retaliation for Vetcher's exercise of protected activity. Adverse action was taken by defendant Ashley to chill his ordinary firmness from continuing said activity and adverse action was motivated at least in part by the exercise of the protected activity on January 22, 2016.

43) On January 25, 2016 Vetcher filed a grievance with defendant Villegas stating that defendant Ashley was denying the grant of law library time contrary to Emerald policy; contrary to DHS policy; stating that defendant Ashley has been engaged in reading legal material before printing; copying legal material; refusing to copy legal material.

44) On January 28, 2016 Vetcher filed a grievance with defendant Villegas stating that defendant Ashley was abusing her authority with intention to hamper/frustrate/deny access to court by instituting a new "two page" policy on January 25, 2016

45) On January 22, 2016 defendant Ashley did not allow Vetcher or any similarly situated detainee to have access to law library absent any legitimate reason.

46) On January 28, 2016 Vetcher contacted DHS Inspector General's Hotline (OIG) and informed them of the violations of his First Amendment Constitutional right by defendant Ashley, who was impeding and frustrating detainees' access to court right, as a form of retaliation for Vetcher's exercise of protected rights/activity. Adverse action was taken against Vetcher by defendant Ashley to chill his ordinary firmness from continuing in said activity and adverse action was motivated at least in part by the exercise of the protected activity on January 22, 2016 and January 25, 2016

47) On February 2, 2016 the plaintiff was informed he was being transferred to an unknown destination. Plaintiff has been so emotionally perturbed by the news that he could not comply with the order. Plaintiff has been detained for almost two years, his family being a source of emotional support and fortitude. Plaintiff was seeking psychological assistance from Dulany a psychology staff member on February 1, 2016 at approx. 11:00 am, as he was experiencing mental anguish due to unjust conditions of confinement, access to law library the only thing standing between plaintiff and his family, such access systematically denied and law library left routinely vacant despite being open. Plaintiff did not want to hurt anyone, he simply wanted to remain where his family could come visit him. His wife made prior inquiries both with the warden Vollegas and plaintiff's DO. She was informed that there was no reason for him to get moved. Due to the retaliatory nature of their move, the officials perpetrated malicious intentions of DO Rowden. Unable to handle another emotional trauma of being torn away from his family, plaintiff tied himself to the pole in his room. At approx. 3 am Lieutenant Green appeared with other correctional officers. Plaintiff pleaded her not to remove him and to contact appropriate official channels. However Lt. Green informed plaintiff that her orders come from up top. She refused to listen to plaintiff's reasoning or to provide him with an ICE officer. She ordered officers to perform acts "repugnant to the conscience of mankind" Lavry v. Green 87 F. Supp 2d. 1210, 1217 (D. Kan. 2000), who forced petit plaintiff's head to the ground, twisted his hands behind his back and yanked at the cloth connecting plaintiff to the pole causing severe pain as the rope cut into plaintiff's soft flesh; causing plaintiff to scream in pain

4 Charles Webb

"Please stop, you are hurting me." over and over again. The officers under command of Lt. Green continued relentlessly in their task, fulfilling maliciously and sadistically envisioned retaliation by DO Rowden. Plaintiff offered no resistance, besides trying to hold on to the pole and offered no threat, peacefully noncomplying with unconstitutional orders; while "without any provocation" Wilkins v. Gaddy ___ US. ___ , 130 S.Ct. 1175, 1179 (2010) Plaintiff suffered abrasions, cuts and his wrists felt numb and swollen, whenever officers succeeded in removing him into intake.

48) On February 2, 2016 at approximately 5am Vetcher and Ali who excused their protected rights collectively from January 21, 2016 to February 1, 2016 were transferred upon authorization and approval/ request of defendant Rowden, Ashley and Villegas without any reason stated on transfer document. Defendants Rowden and Villegas acted or failed to act in an official capacity or under the color of legal authority; defendants set in motion a series of events/acts by others and knowingly refusing to terminate a series of acts by others, which they knew would cause intentional harm; would cause others to inflict constitutional/physical/mental/emotional injury to Vetcher, and are culpable for their inaction in training, supervising, or controlling of subordinates - defendant Ashley, while showing acquiescence in the constitutional deprovation by subordinates - defendant Ashley, showing reckless or callous indifference to the rights of Ali and all similarly situated detainees. Ali and Vetcher were transferred to a worse ICE detention facility (Johnson County Law Enforcement Center) where Vetcher and all similarly situated detainees were required to endure and observe horrendous living conditions in an overcrowded warehouse; with continuous illumination and noise causing sleep deprovation; leaky ceiling; white powdery substance falling from the ceiling (leaks in the ceiling and powdery stuff substance has woken plaintiff up several times in the middle of the night and also has fallen into his food); open bathroom without toilet stalls and showers without shower curtains allowing detainees to be viewed while using the toilet or taking showers from the day room in violation of Prea; unit contaminated with urine and feces fumes; law library even more deficient than RPRJDC; no general interest/educational

books as at RPR3DC; detainees governed under the punitive measures as subjected to pre-trial county jail detainees awaiting court proceedings on Texas State code law violations; no provision of contact visits with family as at RPR3DC; outgoing mail cannot be sealed when placed in mailbox on units and incoming mail opened without presence of detainee; higher cost than RPR3DC on collect calls. All conditions subjected to ICE detainees by defendants ICE agency in direct violation/contravention of law and DHS policies. Defendant ICE cause Vetcher and all similarly situated detainees to be subject to violations of law by subjecting them to unconstitutional conditions of confinement. (Conditions of Confinement subjected to Vetcher were worse than those described by detainees coming from federal facilities.) It is self-evident that conditions of confinement subjected to ICE detainees and Vetcher are clearly "punitive" and "unconstitutional" in opposite to defendant ICE agency's and its agents' claim, hold of detainees is "Administrative", and are subject to least restrictive measures of incarceration, and ICE detainees are "freely provided" more exercise of rights and priveleges and immunities, than those afforded to pretrial detainees and convicts. Said transfer subjected to Vetcher and Ali by ICE and defendants defendants ICE and its agents and contractors is personal policy, tradition or custom to cover-up said civil rights violations and punish those who "DARE" exercise protected conduct. It is also self evident defendants ICE and its agents or employees there of acted or failed to act in an official capacity. All conditions of confinement subjected on Vetcher upon transfer caused him emotional, trauma, distress and anguish.

4a) On February 4, 2016 Vetcher sent a request to DO Weaver at Johnson county law enforcement Center, Cleburne, Texas on an Immigration Special Correspondence form bringing attention to the unconstitutional conditions of confinement stating, "These are multiple leaks on the unit, where water drips at all times. The conditions of confinement do not commensurate with the standards that are acceptable in the modern society, In addition the totality of conditions of confinement - which ICE claims are not punitive are worse in some instances than conditions in prison. A blatant violation of constitutional rights"

50) On February 5, 2016 Vetcher sent a request to DO Weaver at Johnson Law Enforcement Center (JLEC), on an Immigration Special Correspondence form bringing attention to the unconstitutional conditions of confinement stating, "I have not been allowed access to law library at this facility eventhough I have placed request(s) from 2.3.16 through 2.6.16. The provision of "adequate, effective and meaningful access to court is a right which is clearly specified in the DHS video entitled, "Know your Rights" (which plaintiff viewed for the first time during his two year detention and numerous transfers) which was required to be viewed upon my arrival at this facility on 2.2.16. However, this fundamental First Amendment right of access to court is not being provided at this facility. (FYI: my transfer from Haskell was retaliatory due to the fact I challenged the inadequate access to law library provision which impeded and frustrated meaningful access to court and challenging of violation of civil rights of ICE detainees)."

51) On February 5, 2016 at approximately 5:30 PM DO Weaver an ICE agent called Vetcher and Ali outside C3B unit and acknowledged Ali's and Vetchers concerns regarding the leaky ceiling, deficient law library and retaliatory transfers; DO Weaver admitted that Johnson County Law Enforcement Center was not in compliance with federal DHS Standards and confessed retaliatory transfer for exercise of First Amendment Right was "unlawful and in violation of DHS-ICE policies." DO Weaver also stated he had contacted Vetchers and Alies DO; and both did not cause transfers or had knowledge when and why Ali and Vetcher were transferred. DO Weaver asked Ali and Vetcher if they like he would transfer them to Haskell, Texas. Vetcher advised DO Weaver on February 8, 2016 that he did not want to be subject to any more transfers as they cause "emotional, physical and mental distress". DO Weaver forwarded Vetchers statement/request to his DO

52) On February 8, 2016 Vetcher called United Nations High commissioner for refugees as well as OIG and informed them of the constitutional violations subjected to ICE detainees an Johnson Law Enforcement Center ie. black mold on the ceiling black mold on the walls, leaks, prea violations and absence of facility provided hot water um. Vetcher conveyed that conditions of confinement were

"horrendous" and would "shock the conscience" as in a modern society it would never be acceptable to be sheltered in a dwelling contaminated by "black mold" and "leaking ceilings" and gave examples of how unthinkable it was.

53) As a result of defendants conduct set forth, Vetcher has suffered physical injury, including but not limited to sleep depravation, stomach pains, head aches, body aches and severe emotional distress and/or Psychological damage and/or significant pain and suffering and/or personal humiliation

## Claim for Relief

54) Pursuant to Bivens, the defendants in their official capacities and individual capacities, by and through their specific identified acts set-forth above are liable for damages to the Plaintiff, as determined by a jury, as well as for attorney fees, costs of this action, interest provided by the law, and such other relief as is just and proper

Wherefore, Plaintiff Ivan Vetcher prays for judgment against the defendants in their official and individual capacities as follows:

(A) Declaratory Judgment be issued as defendants violated Vetcher's 1st, 5th, 6th, 8th Amendments to the United States Constitution.

(B) Nominal Damages for violations of Vetcher's 1st, 5th, 6th, 8th Amendment to the United States Constitution.

(C) Injunction issued against defendants ICE and Rowden to end constitutional violations of Vetcher and all similarly situated detainees.

(D) Award for Compensatory damages and punitive damages in an an amount to be proven at a trial and determined by jury.

(E) Grant such other relief as it may appear that Vetcher is entitled to.

Respectfully Submitted,

February 16, 2016

Ivan Vetcher

Ivan Alexandrovich Vetcher 070570472
RJPR3DC
118 County Rd 206
Haskell, Texas 79521

## Declaration under penalty of perjury

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information contained herein is true and correct. 28 U.S.C. § 1746, 18 U.S.C. § 1621

Executed at: Rolling Plains Regional Jail
and Detention Center
118 County Rd 206
Haskell, Texas 7952

Ivan Vetcher

Febuary 16, 2016

CommercialPlusPrice

0718007373999

E

**PRIORITY MAIL 1-DAY**

Tram Tran
4100 Silverthorne St
RICHARDSON TX 75082-3791

| C001 | 0020 |

6359175893916745B9

SHIP TO:
US District Court of Northern District
of Texas Dallas Division
1100 Commerce Street 1452
DALLAS TX 75242-1310

USPS TRACKING #

9405 5102 0088 2926 2820 38



RECEIVED

FEB 2 3 2016

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS





RECEIVED

FEB 2 3 2016

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS