UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 IVAN ALEXANDROVICH VETCHER,

                        Plaintiff,              **MEMORANDUM & ORDER**
                                                18-CV-6798(EK)(TAM)

            -against-

 IMMIGRATION CUSTOMS ENFORCEMENT
 AGENTS (ICE) GROUP 1 (AGENTS A-H,
 INCLUDING DO ANTHANASIOS KARAKOSTAS,
 SUPERVISORY DETENTION AND DEPORTATION
 OFFICE (SDDO) IRVING AGUILERA, SDDO
 THOMAS WEIDLEIN), et al.

                        Defendants.

-------------------------------------x
ERIC KOMITEE, United States District Judge:

            Plaintiff Ivan Vetcher brings this suit against

various officers of U.S. Immigration and Customs Enforcement

("ICE"), alleging that they violated his rights when they

attempted to effectuate his removal from the country in 2015.

Vetcher's amended complaint asserts, among other things, that

ICE officers tightly handcuffed, dragged, and suffocated him in

an effort to force him to board a plane for his removal.

Vetcher also suggests (perhaps obliquely) that the officers

violated a command from the U.S. Court of Appeals for the Fifth

Circuit by attempting to remove him without prior notice to that

court.

Construing his *pro se* complaint liberally, I read Vetcher to allege the excessive use of force under the Fourth Amendment and the denial of due process under the Fifth Amendment.  Vetcher asserts these claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C. § 1983, invoking both of these vehicles by name.  He sued defendant ICE officers Irving Aguilera, Thomas Weidlein, Trevor Goriah, and Anthanasios Karakostas, among other named and unnamed ICE employee defendants.  These defendants now move to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim.  For the reasons set forth below, that motion is granted, and the action is dismissed.[1]

## I.   Background

### A.   Procedural History of Vetcher's Removal Proceedings[2]

On July 2, 2014, Vetcher received a Notice to Appear, alleging that he was removable for having committed an

---

[1] The only other identified officer, Steven Galic, is deceased.  *See* ECF No. 95.  As ordered by the Court on December 6, 2018, *see* ECF No. 61, the government made various efforts to identify the unnamed individual defendants pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997).  *See, e.g.*, ECF Nos. 70, 79, 86, 95.  Notwithstanding the Court's order that his amended complaint "name[] individual defendants," *see* Docket Order dated June 29, 2021, Vetcher still includes various unidentified agents.  In any event, any claims against these unnamed agents are dismissed for the same reasons as those brought against the named defendants.

[2] The defendants' memorandum of law and accompanying exhibits detail the relevant history of Vetcher's years-long removal proceedings.  The Court takes judicial notice of administrative and prior judicial decisions

2

"aggravated felony" in violation of Section 237(a)(2)(A)(iii) of
the Immigration and Nationality Act.  *See* Decl. of David A.
Cooper ("Cooper Decl.") Ex. A, ECF No. 115-3.  On August 6,
2014, an Immigration Judge ("IJ") found that Vetcher was
ineligible for asylum or withholding of removal, and ordered him
removed.  *See* Cooper Decl. Ex. B, ECF No. 115-4.  Vetcher
appealed the IJ's decision to the Board of Immigration Appeals
("BIA"), which dismissed the appeal on December 22, 2014,
rendering the order of removal final.  *See* Cooper Decl. Ex. C,
ECF No. 115-5; *see* 8 U.S.C. § 1101(a)(47)(B).

On January 20, 2015, Vetcher filed a petition for
review with the Fifth Circuit.  *See* Pet. for Review, *Vetcher v.
Lynch*, No. 15-60047 (5th Cir. Jan. 20, 2015), ECF No. 1.  The
following month, on February 27, 2015, Vetcher filed a motion to
"place the case on pending status" because he was "in the
process of reopening his case with the Immigration Court and the
Board of Immigration Appeals."  Mot., *Vetcher v. Lynch*, No. 15-
60047 (5th Cir. Feb. 27, 2015), ECF No. 25.  On March 3, 2015,
the Fifth Circuit denied the motion to "stay further
proceedings."  *See* Order, *Vetcher v. Lynch*, No. 15-60047 (5th

---

regarding these proceedings.  *See, e.g.*, *Akran v. United States*, 997 F. Supp.
2d 197, 204 n.5 (E.D.N.Y. 2014) (taking judicial notice of documents from
administrative immigration proceedings), *aff'd*, 581 Fed. App'x 46 (2d Cir.
2014).

3

Cir. Mar. 3, 2015), ECF No. 33.  Thus, as of March 3 — the day
the defendants attempted to remove Vetcher, as set out in
greater detail below — the Fifth Circuit had not stayed
Vetcher's removal.  *Cf.* 8 U.S.C. § 1252(b)(3)(B) ("Service of
the petition . . . does not stay the removal of an alien pending
the court's decision on the petition, unless the court orders
otherwise.").

> Only on April 9, 2015, did the Fifth Circuit grant a
stay of the removal order, in light of a potential error in the
IJ's determination that Vetcher's conviction constituted an
"aggravated felony."  *See Vetcher v. Lynch*, No. 15-60047 (slip
op.) (5th Cir. Apr. 9, 2015), ECF No. 43.  Following several
years of additional proceedings, Vetcher was removed in 2018.
*See* Cooper Decl. Ex. E, ECF No. 115-7.  This removal was later
effectively affirmed by the Fifth Circuit.  *Vetcher v. Barr*, 953
F.3d 361, 366-70 (5th Cir. 2020); *see also id.* at 365-66
(summarizing Vetcher's removal proceedings).

**B.   Amended Complaint Allegations**

> The following facts are taken from Vetcher's amended
complaint and presumed to be true for purposes of this motion.

> 1.   March 3, 2015 Attempted Removal

> On March 3, 2015, a group of eight ICE agents —
Officers Karakostas, Aguilera, and Weidlein and others unknown —
attempted to remove Vetcher through John F. Kennedy

International Airport ("JFK").  Am. Compl. 1, ECF No. 102.  At
the airport, Vetcher informed the agents that he refused to
board the airplane because his request for a stay of removal was
still pending.  *Id.* at 6.  In response, several agents "forced
[his] hands behind his back, handcuffed him, picked him up by
the elbows and dragged him . . . into the airplane" as another
agent "stood guard at the gate."  *Id.*  Once aboard, another
agent (identified as "ICE Group 1 Agent A") "covered Vetcher's
mouth and nose with his gloved hand," so that he "could not
breathe" and "began to lose consciousness."  *Id.* at 7.  "Agent
A" moved his hand away from Vetcher's face "when he realized
[he] was losing consciousness," and Vetcher "went into a fit of
coughing spasm."  *Id.*  The agents then led Vetcher off the
airplane and back through the airport, forcing him to carry his
personal bags on his own.  *Id.* at 7–8.  At this time, his wrists
were bleeding, and he "felt the pain from his . . . injuries
more acutely as he dragged" his bags through the airport.  *Id.*

   Vetcher alleges that Agent A violated his Fourth
Amendment rights by using excessive force against him, and that
the remaining seven agents should be held liable for failing to
intervene to prevent that use of force.

  2. <u>March 4, 2015 Transport</u>

   On the following day, March 4, 2015, Officers Goriah
and Galic transported Vetcher by van to a facility in Batavia,

New York.  *Id.* at 8.  Vetcher alleges that his handcuffs were "tighter than usual" during this trip and were "chafing and digging into [his] injured wrists," but the agents ignored multiple requests that the cuffs be loosened.  *Id.* at 8-9.  The pain was "excruciating."  *Id.* at 8.  The agents eventually checked on his handcuffs during a break halfway through the eight-hour drive.  *Id.* at 8-9.  Galic "forced his thumb between Vetcher's injured inner wrists and twisted it with painful pressure," "forcing the handcuffs to dig into" his wrists.  *Id.* at 9.  Galic concluded that the cuffs were "not too tight" and did not adjust them.  *Id.*  Vetcher received medical treatment for his wrists once he arrived in Batavia.  *Id.*

Vetcher alleges that Goriah witnessed Galic's treatment of him, but "failed to intervene" to uphold his right "to be protected from excessive force."  *Id.* at 2.

3.   Failure to Notify Fifth Circuit of Removal

Finally, Vetcher alleges that defendants Aguilera and Weidlein violated a Fifth Circuit "directive" to notify the court of any scheduled removal.  *See id.* at 9-10.  Shortly after Vetcher filed for a stay of removal, he received a notice from the Fifth Circuit Clerk, addressed to a non-party deportation officer, indicating that Vetcher's stay of removal petition was pending and that the court should be notified if and when Vetcher's removal was scheduled.  *Id.* at 10.  According to

Vetcher, Aguilera and Weidlein knew in advance about his
scheduled removal from JFK, but did not inform either the Fifth
Circuit or the Office of Immigration as directed.  *Id.* at 9-10.
Vetcher alleges that this denied him "due process to have his
motion for stay of removal adjudicated prior to his removal" on
March 3, 2015.  *Id.* at 10.

## II.  Legal Standards

At the pleading stage, "all well-pleaded,
nonconclusory factual allegations in the complaint" are assumed
to be true.  *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111,
124 (2d Cir. 2010).[3]  *Pro se* complaints are held to less
stringent standards than pleadings drafted by attorneys, and the
Court will read a *pro se* complaint liberally and interpret it as
raising the strongest arguments it suggests.  *Erickson v.
Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed
Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Still, a *pro se* plaintiff is not exempt from
"compliance with relevant rules of procedural and substantive
law."  *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).  Thus,
dismissal is appropriate where the Court lacks subject matter
jurisdiction over the action.  Fed. R. Civ. P. 12(b)(1).  And to

---

[3] Unless otherwise noted, when quoting judicial decisions this order
accepts all alterations and omits all citations, footnotes, and internal
quotation marks.

survive a motion to dismiss on Rule 12(b)(6) grounds, the complaint must plead sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. Discussion

The defendants move to dismiss the amended complaint on two grounds that are relevant here. First, they assert, 8 U.S.C. § 1252(g) strips the Court of jurisdiction to hear Vetcher's claims. Second, they argue that even if this Court has jurisdiction, Vetcher cannot pursue any *Bivens* action on the facts alleged.[4]

---

[4] Vetcher styles the amended complaint as a "42 U.S.C. § 1983 and Bivens Action." *See* Am. Compl. 1. Because they are federal officials, however, the defendants cannot be liable under § 1983. *Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005) ("[Section 1983] appl[ies] only to state actors, not federal officials."). This makes little difference here: "§ 1983 claims improperly filed against federal employees are routinely interpreted as properly pleaded under *Bivens* . . ., the federal counterpart to § 1983." *E.g.*, *Aikman v. Cnty. of Westchester*, 691 F. Supp. 2d 496, 498-99 (S.D.N.Y. 2010) (collecting cases).

**A.    Section 1252(g) Partially Bars Vetcher's Claims**

In 1996, Congress acted to limit the federal courts'
jurisdiction to hear challenges to certain removal-related
actions, by passing the Illegal Immigration Reform and Immigrant
Responsibility Act ("IIRIRA").  One provision adopted at that
time — 8 U.S.C. § 1252(g) — states that "no court shall have
jurisdiction to hear any cause or claim by . . . any alien
arising from the decision *or action* by the Attorney General to
commence proceedings, adjudicate cases, or *execute removal
orders* against any alien under this chapter."  8 U.S.C. §
1252(g) (emphases added).

Broadly speaking, such language would appear to bar
jurisdiction here, given that Vetcher complains of actions that
the agents took in the course of effectuating his removal.  But
the Supreme Court has given this language a "narrow reading,"
holding that such a construction was necessary to "make[] sense
of [IIRIRA's] statutory scheme as a whole."  *Reno v. American-
Arab Anti-Discrimination Committee* ("*AADC*"), 525 U.S. 471, 487
(1999).  In *AADC*, the Court held that Section 1252(g) spoke to
discretionary acts at "three discrete events along the road to
deportation," rather than "referring to all claims arising from
deportation proceedings."  *Id.* at 482.  The jurisdictional bar's
aim was protecting the Executive's broad discretion to proceed —
or not — at the three stages listed: commencement of

proceedings, adjudication of removal petitions, and execution of removal orders.  *Id*. at 483-84.  In other words, Section 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the[se] three listed actions," but instead "refer[s] to just those three specific actions themselves." *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

Neither the Supreme Court nor the Second Circuit has considered whether excessive force in this context falls within the definition of "execut[ing] removal orders."[5]  But given its prescribed narrow interpretation, Section 1252(g) does not preclude this Court's review of Vetcher's excessive-force claims.  As the *Jennings* Court explained, "when confronted with capacious phrases like 'arising from,' we have eschewed uncritical literalism . . . ."  *Id.* at 840.

Section 1252 thus "empower[s] [ICE agents] to remove [an individual] at their discretion, but "they cannot do so in

---

[5] Last year, the Second Circuit declined to decide this jurisdictional question.  *See Reeves v. United States*, No. 20-4095, 2022 WL 2812881, at *2 (2d Cir. July 19, 2022).  In that case, the *pro se* plaintiff Reeves brought claims for false arrest and excessive force under the Federal Tort Claims Act ("FTCA"), in connection with his arrest by ICE agents.  The district court dismissed the complaint, concluding that it lacked subject-matter jurisdiction under Section 1252(g) because the agents were enforcing a final order of removal when they arrested the plaintiff.  *Id.* at *1.  On appeal, Reeves obtained counsel and argued, for the first time, that Section 1252(g) does not strip federal courts of jurisdiction to consider his FTCA claim for excessive force, regardless of whether the ICE officers were executing a final order of removal.  *Id.* at *2.  The Second Circuit remanded the case for the district court to consider the jurisdictional issue in the first instance.  *Id.*

any manner they please" — as alleged here, suffocating Vetcher
and dragging him onto the airplane.  *See You, Xiu Qing v.
Nielsen*, 321 F. Supp. 3d 451, 457–58 (S.D.N.Y. 2018).  Thus, in
*You, Xiu Qing*, Judge Torres concluded — correctly, in my view —
that Section 1252(g) did not strip courts of jurisdiction to
hear all challenges to the manner of deportation, including the
hypothetical (and admittedly "far-fetched") scenario in which
ICE officials "drop[] [an individual] on a life raft in the
middle of the Atlantic Ocean."  *Id.* at 457.  Accordingly, the
Court proceeds to the merits of the excessive force claims.

Section 1252(g)'s jurisdictional bar does, however,
apply to Vetcher's due process claims.  Where the government
"unquestionably had statutory authority to execute [a] final
order of removal," the district court may not review the
exercise of discretion to effectuate that decision — at least
not by dressing a legal challenge up as a due-process violation.
*See Ragbir v. Homan*, 923 F.3d 53, 64 (2d Cir. 2019), *cert.
granted, judgment vacated sub nom. Pham v. Ragbir*, 141 S.Ct. 227
(2020); *You*, 321 F. Supp. 3d at 457.  Notwithstanding the Fifth
Circuit's alleged directive that it be notified *when* Vetcher's
removal was scheduled, the defendant ICE agents unquestionably
maintained the discretion to remove him.  Indeed, there was no
stay of removal in effect at the time of Vetcher's attempted
removal, and the Fifth Circuit did not grant one until the

following month in April 2015.  Thus, as to this aspect of his
attempted removal, Vetcher effectively challenges the agents'
exercise of discretion in deciding how and when to execute a
valid removal order.

His due process claim thus falls within the ambit of
Section 1252(g)'s jurisdictional bar.  *See Sadhvani v. Chertoff*,
460 F. Supp. 2d 114, 122 (D.D.C. 2006), *aff'd*, 279 F. App'x 9
(D.C. Cir. 2008) (Section 1252(g) bars review of a "decision to
execute [petitioner's] removal order without notifying the BIA
or the [DOJ] and while his motion to reopen the removal
proceedings was still pending"); *Johnson v. Gonzalez*, No. 5-CV-
04774, 2007 WL 9719055, at *3 (E.D.N.Y. Mar. 29, 2007) (Section
1252(g) bars jurisdiction over suit arising from execution of
removal order despite the pendency of plaintiff's habeas
petition).

## B. Vetcher Fails to State A Claim Under *Bivens*

In any case, and even assuming the Court has
jurisdiction to hear all of Vetcher's claims, none survive a
motion to dismiss under Rule 12(b)(6) because they fail to state
any cognizable cause of action under *Bivens*.[6]

---

[6] The Court evaluates Vetcher's due process claims under *Bivens* in the
alternative.  *See Butcher v. Wendt*, 975 F.3d 236, 242–43 (2d Cir. 2020) ("If,
as here, the jurisdictional constraints are imposed by statute, not the
Constitution, we have found it particularly prudent to assume hypothetical

1.   *Bivens* Claims Post-*Egbert*

In deciding *Bivens* in 1971, the Supreme Court recognized an implied cause of action for damages for an alleged violation of the Fourth Amendment against agents of the Federal Bureau of Narcotics.   403 U.S. at 389.   Over the following decade, the Court recognized two additional causes of action under the Constitution: first, a Fifth Amendment sex-discrimination claim by a former congressional staffer, *see Davis v. Passman*, 442 U.S. 228 (1979); and second, an Eighth Amendment inadequate-care claim by a federal prisoner.   *See Carlson v. Green*, 446 U.S. 14 (1980).

Since *Carlson*, however, the Supreme Court has found no new implied cause of action in the Constitution, despite having considered the question at least twelve times.   *See, e.g.*, *Egbert v. Boule*, 142 S. Ct. 1793, 1799-1800 (2022).   Recently, the Court stated that if it were "called to decide *Bivens* today," it "would decline to discover any implied causes of action in the Constitution."   *Id.* at 1809.   Although it has so far declined to "dispense with *Bivens* altogether," the Supreme Court now emphasizes that "recognizing a cause of action under *Bivens* is a disfavored judicial activity."   *Id.* at 1803.   "Even a single sound reason to defer to Congress is enough to require

---

jurisdiction where the jurisdictional issues are complex and the substance of the claim is plainly without merit.").

a court to refrain from creating such a remedy." *Id.*  The
message is clear: "in all but the most unusual circumstances,"
Congress, not the courts, is the proper forum for creating a new
private right of action. *Id.* at 1800.

Prior to *Egbert*, the Supreme Court had prescribed a
two-step process for evaluating requests to imply new
constitutional causes of action. *Id.*  A court first must
determine whether the case presents "a new *Bivens* context" — in
other words, whether the case differs in "meaningful" ways from
the three cases in which the Supreme Court has implied a cause
of action. *Id.* at 1803.  A new context may arise, for example,
when a case involves a "new category of defendants." *Id.*  When
a claim presents a new context, the court then must consider
whether any "special factors" counsel against implying a new
cause of action. *Id.*  Although the Supreme Court has not
defined with precision what makes a factor "special," it has
instructed that the key inquiry is whether "there is any reason
to think that judicial intrusion into a given field might be
harmful or inappropriate." *Id.* at 1805.  "If so, or even if
there is the *potential* for such consequences, a court cannot
afford a plaintiff a *Bivens* remedy." *Id.*

In *Egbert*, the Supreme Court recognized that this two-
step analysis "often resolve[s] to a single question: whether
there is any reason to think that Congress might be better

14

equipped to create a damages remedy." *Id.* at 1803. A "new context," for example, arises anytime "there are potential special factors that previous *Bivens* cases did not consider." *Id.* And new contexts, like cases involving a new category of defendants, often entail "situations in which a court is not undoubtedly better positioned than Congress to create a damages action." *Id.* "Even in a particular case, a court likely cannot predict the systemwide consequences of recognizing a cause of action under *Bivens*. That uncertainty alone is a special factor that forecloses relief." *Id.* at 1803-04. In other words, the "newness" of a claim "should alone require dismissal." *Id.* at 1804.

Thus, the bar for concluding that a claim falls outside the existing *Bivens* contexts is very low. A claim may arise in a new context even when — compared with a previously recognized *Bivens* claim — the claim is based on the same constitutional provision, presents "almost parallel circumstances," and involves a "similar mechanism of injury." *Id.* at 1805. Accordingly, the only permissible contexts under *Bivens* are not Fourth, Fifth, and Eighth Amendment claims, respectively, but rather "a claim against FBI agents for handcuffing a man in his own home without a warrant; a [sex-discrimination] claim against a Congressman for firing his female secretary; and a claim against prison officials for

failure to treat an inmate's asthma." *Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017).

These principles foreclose the recognition of a *Bivens* cause of action for Vetcher's Fourth Amendment excessive force and failure to intervene claims, as well as his Fifth Amendment due process claim.

2.   Vetcher's Fourth Amendment Claims

Vetcher alleges that the defendant ICE agents, including Officers Aguilera, Weidlein, and Karakatos, failed to intervene as Agent A tightly handcuffed and suffocated him at JFK, while attempting to execute the removal order. *See* Am. Compl. 1-2.  He similarly alleges that, during a separate incident on the following day, Officer Goriah was aware that Galic had tightly handcuffed him, but nevertheless failed to intervene. *See id.* at 2.  Under the Supreme Court's restrictive rubric, such allegations plainly present a new context.

First, Vetcher's theory of liability as to all defendants (except unidentified Agent A) is premised on their alleged failures to intervene, rather than an underlying excessive force violation.  This presents a new context. *See, e.g.*, *Johnson v. Santiago*, 624 F. Supp. 3d 295, 300 (E.D.N.Y. 2022) ("[A] claim for failure to protect based on the allegation that [Defendant] was present during the attack on Plaintiff but did not help Plaintiff or intervene presents a new *Bivens*

context."); *Cannenier v. Skipper-Scott*, No. 18-CV-2383, 2019 WL
764795, at *5 (S.D.N.Y. Feb. 20, 2019) ("The Supreme Court has
recognized only three *Bivens* contexts, none of which include
failure to protect . . . ."); *Martinez v. D'Agata*, No. 16-CV-44,
2019 WL 6895436, at *7 (S.D.N.Y. Dec. 18, 2019) (declining to
find *Bivens* remedy for claim against federal defendants for
"failure to intervene").

Additionally, the defendants here are ICE agents, not
federal narcotics officers as in *Bivens*.  *See Tun-Cos v.
Perrotte*, 922 F.3d 514, 525 (4th Cir. 2019) (*Bivens* claims
presented new context because, among other reasons, the
defendants were ICE agents, not federal narcotics agents); *see
also Lewis v. Westfield*, 640 F. Supp. 3d 249, 253 (E.D.N.Y.
2022) (new context in part because the defendants were members
of the U.S. Marshals Service).  And, as ICE officers, the
defendant officers here were operating under a different "legal
mandate" — immigration law — than the narcotics officers in
*Bivens*: whereas *Bivens* involved narcotics agents sued "for
handcuffing a man in his own home without a warrant" while
investigating drug violations, *Abbasi*, 582 U.S. at 140, the
defendant officers here were attempting to effectuate a valid
order of removal and then transporting Vetcher after that failed
attempt.  *See, e.g.*, *Tun-Cos*, 922 F.3d at 524 (ICE agents

operated under a "distinct" legal mandate, as compared with the narcotics officers in *Bivens*).

Special factors counsel against extending *Bivens* to Vetcher's claims.  His claims arise in the context of immigration enforcement.  "Because matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention," the Supreme Court has explained, "a *Bivens* cause of action may not lie where . . . national security is at issue."  *Egbert*, 142 S. Ct. at 1804-05.  Although *Egbert* involved incidents at the border, the Supreme Court's reasoning suggests that immigration enforcement in general implicates national security and foreign policy concerns.  *See id.* at 1806 (explaining that "immigration investigations in *this* country are perhaps *more* likely to impact the national security of the United States" than such investigations occurring outside the United States).  Indeed, in a recent case following *Egbert*, the identity of the defendants' employers — ICE and the Department of Homeland Security ("DHS") — was dispositive for this reason.  *See Muzumala v. Mayorkas*, No. 22-CV-3789, 2022 WL 2916610, at *5 (S.D.N.Y. July 22, 2022).

As another special factor, the existence of alternative remedial structures likewise favors dismissal in this case.  Courts "may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to

provide, an alternative remedial structure." *Egbert*, 142 S. Ct. at 1804.  If any such structure is in place, "that alone" is sufficient "to limit the power of the Judiciary to infer a new *Bivens* cause of action" — even if "existing remedies do not provide complete relief." *Id.*  Put another way, "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 1807.

The Court in *Egbert* found alternative remedies "independently foreclose[ing] a *Bivens* action" based on the Secretary of DHS's "statutor[y] obligat[ion] to 'control, direct, and supervise all employees,'" *id.* at 1806 (quoting 8 U.S.C. § 1103(a)(2)), and DHS's regulatory obligation to "investigate 'alleged violations of the standards for enforcement activities' and accept grievances from 'any persons wishing to lodge a complaint," *id.* (quoting 8 C.F.R. § 287.10(a)-(b)).  While *Egbert* examined these provisions as relevant to the Customs and Border Patrol specifically, they reflect broadly the powers and responsibilities of the DHS Secretary — who oversees component agencies including the ICE — and thus apply with equal force here.

The defendants point to additional alternative remedies created by Congress and the Executive branch.  For

example, Offices of Inspector General ("OIG") across the Executive Branch are authorized to investigate and report abuses by federal law-enforcement officers, including ICE officials. *See* 5 U.S.C. § 403; 6 U.S.C. § 113(b); *see also* 5 U.S.C. § 417. Congress also separately established the Office of Civil Rights and Civil Liberties, 6 U.S.C. §§ 113(d)(3), 345, which may, upon the OIG's referral, investigate alleged abuses of civil rights and civil liberties by DHS employees.  5 U.S.C. § 417(f)(2)(E)-(G).  Taken altogether, these grievance and investigation processes give the Court "no warrant to doubt" that the consideration of any complaint filed by Vetcher with these offices would "secure[] adequate deterrence" and afford an alternative remedy.  *Egbert*, 142 S. Ct. at 1807.

In short, Vetcher's excessive force claims present a new context, and special factors counsel against extending *Bivens* to provide a right of action in that new context.  These claims therefore must be dismissed.

3.   Vetcher's Due Process Claims

Vetcher's Fifth Amendment due process claim suffers from similar shortcomings.  The fact pattern in *Davis* bears virtually no resemblance to the instant case: whereas *Davis* concerned a substantive due process claim arising from alleged sex discrimination by a congressman against a staff member, *see generally* 442 U.S. 228, Vetcher asserts a due process claim

based on Officers Aguilera and Weidlein's failure to follow an alleged Fifth Circuit directive to inform that court as to the timing of his removal.  This, too, plainly presents a new context.  And the same special factors that preclude Vetcher's Fourth Amendment claims likewise foreclose a *Bivens* remedy on this claim.  Accordingly, the Fifth Amendment due process claim also fails.

## IV.  Conclusion

For the foregoing reasons, the defendants' motion to dismiss the amended complaint is granted.  The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.


<u>  /s/ Eric Komitee          </u>
ERIC KOMITEE
United States District Judge


Dated:    October 18, 2023
          Brooklyn, New York